KEVIN E. GAUT (SBN 117352)
keg@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

LUCY H. PLOVNICK (*pro hac vice*) (DC Bar No. 488752)
lhp@msk.com
MITCHELL SILBERBERG & KNUPP LLP
1818 N. Street NW, 7th Floor
Washington, DC 20036
Telephone: (202) 355-7900
Facsimile: (202) 355-7899

Attorneys for Valnet Inc. and Valnet US Inc.
d/b/a Screenrant.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

DASSAH MAKETA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

VALNET INC. and VALNET U.S., INC. d/b/a SCREENRANT.COM,

Defendants.

CASE NO. 3:25-CV-05517-RS

Hon. Richard Seeborg, District Judge

**DEFENDANTS VALNET INC. AND VALNET US INC.'S NOTICE OF MOTION AND MOTION TO DISMISS**

Date: October 7, 2025
Time: 1:30 p.m.
Courtroom: 3

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

PLEASE TAKE NOTICE that on October 7, 2025 at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Richard Seeborg in Courtroom 3 – 17th Floor of the United States District Court for the Northern District of California, San Francisco Courthouse, located at 450 Golden Gate Ave., San Francisco, CA 94102, Defendants Valnet Inc. and Valnet US Inc. d/b/a Screenrant.com (collectively, "Valnet") will and does hereby move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an Order dismissing the Complaint of Plaintiff Dassah Maketa ("Plaintiff") in its entirety, without leave to amend.

This Motion is made on the grounds that the Complaint fails to state a claim for relief under Federal Rule of Civil Procedure Rule 12(b)(6).

This Motion is based upon this Notice of Motion and Memorandum of Points and Authorities; all pleadings and other records on file in this action; any other matters that may be judicially noticed; and such further evidence and arguments as may be presented at or before the hearing on this Motion.

DATED: August 7, 2025

RESPECTFULLY SUBMITTED,

LUCY HOLMES PLOVNICK
MITCHELL SILBERBERG & KNUPP LLP

By: */s/ Lucy Holmes Plovnick*
Lucy Holmes Plovnick
Attorney for Valnet Inc. and Valnet US Inc. d/b/a Screenrant.com

# TABLE OF CONTENTS


I. PRELIMINARY STATEMENT ..... 8

II. FACTUAL BACKGROUND ..... 9

A. Valnet and its Website ..... 9

B. Relevant Allegations in the Complaint ..... 9

C. Data Transmission By Pixels ..... 10

III. LEGAL STANDARD ..... 11

IV. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) BECAUSE IT FAILS AS A MATTER OF LAW ..... 12

D. The Software is Not a "Pen Register" ..... 12

1. The Data Transferred by The Software Is Not Covered By CIPA ..... 13

2. Plaintiff Has No Protected Privacy Interest In Her IP Addresses ..... 14

3. Pen Register Statutes Do Not Apply To IP Addresses ..... 16

4. CIPA's "Pen Register" Statute Should Be Construed Narrowly. ..... 16

E. Plaintiff Fails to Plead All Requisite Elements Of a "Pen Register" ..... 20

V. CONCLUSION ..... 21

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995) ..... 19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..... 11

*Augustine v. Lenovo (United States), Inc.*, 2023 WL 4938050 (S.D. Cal. Aug. 2, 2023) ..... 17

*Bell v. Farmers Ins. Exch.*, 87 Cal. App. 4th 805 (2001) ..... 16

*Capitol Recs. Inc. v. Thomas-Rasset*, 2009 WL 1664468 (D. Minn. June 11, 2009) ..... 16

*Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370 (Cal. Super. Sep. 09, 2024) ..... 16

*Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419 (C.D. Cal. May 29, 2007) ..... 16

*Cooper v. Bonobos, Inc.*, 2022 WL 170622 (S.D.N.Y. Jan. 19, 2022) ..... 15

*Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010) ..... 11

*Digital Shape Techs., Inc. v. Glassdoor, Inc.*, 2016 WL 5930275 (N.D. Cal. Oct. 12, 2016) ..... 14

*Greenley v. Kochava, Inc.*, 684 F.Supp.3d 1024 (S.D. Cal. 2023) ..... 12, 15, 18

*Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182 (N.D. Cal. 2020) ..... 14

*Hinds Invs., L.P. v. Angioli*, 654 F.3d 846 (9th Cir. 2011) ..... 21

*Ji v. Naver Corp.*, 2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) ..... 14

*Kauffman v. Papa John's Int'l, Inc.*, 2024 WL 171363 (S.D. Cal. Jan. 12, 2024) ..... 17

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. 2025) ..... 13, 14

*Lesh v. Cable News Network, Inc.*,
767 F. Supp. 3d 33 (S.D.N.Y. 2025) ..... 18

*Licea v. Cinmar LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ..... 17

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Super. Mar. 13, 2024) ..... 15, 19

*Licea v. Vitacost.com, Inc.*,
683 F. Supp. 3d 1118 (S.D. Cal. 2023) ..... 17

*Malibu Media, LLC v. Doe*,
2019 WL 2537671 (D. Conn. June 20, 2019) ..... 14

*Malibu Media, LLC v. Pontello*,
2013 WL 12180709 (E.D. Mich. Nov. 19, 2013) ..... 16

*Martin v. Sephora USA, Inc.*,
2023 WL 2717636 (E.D.Cal., 2023) ..... 21

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ..... 16, 17

*Matlean v. Fed. Hous. Fin. Agency*,
2019 WL 2620716 (C.D. Cal. May 24, 2019) ..... 11

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ..... 12

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) ..... 8

*People v. Larkin*,
194 Cal.App.3d 650 (1987) ..... 17

*Produce Pay, Inc. v. Izguerra Produce, Inc.*,
39 F.4th 1158 (9th Cir. 2022) ..... 11

*Riganian v. LiveRamp Holdings, Inc.*,
2025 WL 2021802 (N.D. Cal. July 18, 2025) ..... 12, 17, 18

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Sanchez v. Cars.com Inc.*,
2025 WL 487194 (Cal. Super. Jan. 27, 2025) ........ 18, 20

*Shah v. Fandom, Inc.*,
754 F.Supp.3d 924 (N.D.Cal., 2024) ........ 18

*Shroyer v. New Cingular Wireless Servs., Inc.*,
622 F.3d 1035 (9th Cir. 2010) ........ 11

*Smith v. Maryland*,
442 U.S. 735 (1979) ........ 17

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) ........ 11

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) ........ 8

*United States v. Jean*,
207 F. Supp. 3d 920 (W.D. Ark. 2016), *aff'd*, 891 F.3d 712 (8th Cir. 2018) ........ 15

*United States v. Kidd*,
394 F. Supp. 3d 357 (S.D.N.Y. 2019) ........ 15

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ........ 11

**STATUTES**

18 U.S.C.
§ 3127(3) ........ 16, 19

Cal. Penal Code
§ 631(a) ........ 8, 17
§ 631 *et seq* ........ 8
§ 632.7 ........ 17
§ 632.7(a) ........ 17
§ 638.50 ........ 17
§ 638.50(b) ........ 9, 10, 12, 13, 18, 20
§ 638.51 ........ 8
§ 638.51(a) ........ 8, 10, 12
§ 638.52(d)(3) ........ 19

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

### OTHER AUTHORITIES

Fed. R. Civ. P.
12(b)(6) ........ 8, 11, 12

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. PRELIMINARY STATEMENT

This action makes novel claims to reinterpret an old statute plainly not intended to cover the circumstances at issue. Here, Plaintiff alleges that collecting and disclosing website visitors' IP addresses or similar data violates the pen register provision in the California Penal Code, known as the California Invasion of Privacy Act, Cal. Pen. Code § 631 *et seq* ("CIPA"). That law was originally enacted in 1967 to protect individuals from unauthorized surveillance and interception of communications, and was never intended to include disclosure of website information, such as internet protocol ("IP") addresses and device metadata, as Plaintiff now alleges. Plaintiff's "theory" alleging that website cookies are "pen registers" is an attempt to stretch CIPA far beyond its intended bounds. The majority of California courts interpreting the statute have dismissed attempts to apply the CIPA provision prohibiting unauthorized *wiretapping*, Cal. Pen. Code § 631(a), to website advertising and analytics technologies.[1] The "pen register" claim at issue here is an attempted work-around, aiming to convince this Court to apply a different provision of CIPA, Cal. Pen. Code § 638.51, to website cookies. This effort should also fail.

Plaintiff Dassah Maketa brought this Complaint alleging one count – violation of Cal. Penal Code § 638.51(a). Plaintiff seeks to hold defendants Valnet US Inc. and Valnet Inc. (collectively, "Valnet") liable for thousands of dollars in statutory damages solely because Valnet allegedly collects visitors' IP addresses and device metadata through its ScreenRant website, https://screenrant.com/ (the "Website"), which provides movie and television reviews and information.

Plaintiff's Complaint should be dismissed under Rule 12(b)(6) because it fails to state a claim as a matter of law under "CIPA§ 638.51 for the following reasons: (1) the Software described in the Complaint is not a "pen register," as defined by CIPA; (2) and Plaintiff fails to plead all requisite statutory elements of a "pen register."

[1] *See, e.g., Pena v. GameStop, Inc.,* 670 F. Supp. 3d 1112 (S.D. Cal. 2023); *Swarts v. Home Depot, Inc*., 689 F. Supp. 3d 732 (N.D. Cal. 2023).

## II. FACTUAL BACKGROUND[2]

### A. Valnet and its Website

Valnet is a digital media company that owns and operates a portfolio of popular entertainment and lifestyle websites. One of its flagship sites is the ScreenRant Website, which is dedicated to covering movies, television, video games, and pop culture news. ScreenRant offers a mix of breaking entertainment news, reviews, trailers, interviews, and opinion pieces.

Valnet is not a data broker. As explained by Plaintiff, a data broker is typically defined as a business that collects, aggregates, and sells or shares personal data about consumers. Compl. ¶ 117 Data brokers do not usually have a direct relationship with users.

Valnet, by contrast, is a digital media publisher that monetizes its Website primarily through advertising revenue. While Valnet may facilitate or participate in behavioral advertising ecosystems (where third parties collect data), Valnet is not a data broker.

### B. Relevant Allegations in the Complaint

Plaintiff's claim arises solely from Valnet's alleged installation of two types of software—the ADNXS Tracker, and the OpenX Tracker (collectively, the "Software") on the internet browsers of users who visit the Website. Complaint ¶¶ 1-2. Plaintiff alleges that the Software allows Microsoft Corporation and OpenX Technologies, Inc. (collectively the "Third Parties") to collect Website users' IP addresses and some other information identifying the device ("Device Metadata"). Complaint ¶¶ 2-3. Plaintiff alleges she regularly visits the Website on her desktop browser, and visited it as long ago as 2018 and as recently as April 2025. Complaint ¶ 177. When she visited the Website –she alleges – the Software was installed on her browser, which allowed Third Parties to collect her "IP address, Device Metadata, and set a cookie with a unique user ID[.]" *Id.* ¶¶ 178-179.

Plaintiff further alleges that because the Software captures Website visitors' "routing, addressing, or signaling information," the Software constitutes a "pen register" under Section 638.50(b) of CIPA. Complaint ¶¶ 5, 36, 101. Plaintiff also alleges that by installing and using the

[2] Unless otherwise noted, these factual allegations are taken from Complaint and are presumed true solely for purposes of this Motion.

Software, Valnet violated CIPA § 638.51(a), which prohibits installation or use of pen registers. *Id.* ¶¶ 181, 184. Plaintiff's Complaint is not short on lengthy technical explanations, images, and charts purporting to explain the technology behind IP addresses, online ad bidding, the role of data brokers, and numerous other allegations that are not relevant to the question of why the Software qualifies as a pen register under CIPA.

The statutory definition of a "pen register" comprises several elements: [i] a pen register can be only a "device or process that [ii] records or decodes [iii] dialing, routing, addressing, or signaling information [iv] transmitted by an instrument or facility from which a wire or electronic communication is transmitted, [v] but not the contents of a communication." CIPA § 638.50(b).

Plaintiff alleges that the Software constitutes either a "process" because it "identifies consumers, gathers data, and correlates that data[,]" or a "device" because "in order for software to work, it must be run on some kind of computing device." Complaint ¶ 99, 100. And Plaintiff further alleges that "[a] public IP address is 'addressing' information because it determines the general geographic coordinates of the user who is accessing a website[,]" and it is also "'routing' or 'signaling' information because it is sending or directing the user's communication from the router in their home or work to the website they are communicating with, and ensuring that "emails, websites, streaming content, and other data reaches you correctly." Complaint ¶ 49, 50.

The Complaint contains no allegations explaining how Device Metadata (such as device type, browser type, etc.) constitutes "dialing, routing, addressing, or signaling information." Plaintiff also claims that the personally identifiable information allegedly disclosed by the Software is valuable and traded by data brokers. Complaint ¶¶ 119- 176.

### C. <u>Data Transmission By Pixels</u>

The Software in question are two pixels operated by Third Parties: the ADNXS Tracker and OpenX Tracker. The first time a user visits the Website, the user's browser sends an HTTP request to Website's server, and the server sends an HTTP response with directions to install the Software on the user's browser. The Software, in turn, instructs the user's browser to send the user's IP address and Device Metadata – which Third Parties receive through the Software.

Complaint ¶¶ 75, 107. The process described in the Complaint alleges that the data is "transmitted" between the Software, user's browser and the Third Party servers. Plaintiff does not (and cannot) allege that Software records any data – indeed the Software is not a device capable of data storage.

## III. LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also, Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) ("[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter to state a facially plausible claim to relief.").

When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Matlean v. Fed. Hous. Fin. Agency*, 2019 WL 2620716, at *2 (C.D. Cal. May 24, 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). But a court does not need to accept as true any "legal conclusion couched as a factual allegation" (*Iqbal*, 556 U.S. at 678, internal quotation marks omitted) and does not need to make "conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) (internal citations omitted).

On a motion to dismiss, a court may consider documents attached to the complaint, documents incorporated by reference in the complaint, or documents subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A court is not required to accept as true allegations that contradict documents that are attached to the complaint, incorporated by reference in the complaint, or subject to judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Produce Pay, Inc. v. Izguerra Produce, Inc.*, 39 F.4th 1158, 1161 (9th Cir. 2022); *see also, Sprewell*, 266 F.3d at 988 (on a motion to dismiss, "allegations that contradict matters properly subject to judicial notice" are insufficient).

## IV. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(B)(6) BECAUSE IT FAILS AS A MATTER OF LAW

Plaintiff's Complaint fails to state a claim as a matter of law under CIPA for two independently sufficient reasons. *First*, the Software described in the Complaint is not a "pen register" as defined by CIPA because (i) the data transferred by the Software is not covered by CIPA; (ii) Plaintiff has no protected privacy interest in her IP addresses; (iii) pen register statutes do not apply to IP addresses; and (iv) CIPA should be construed narrowly and not applied in this context. *Second*, Plaintiff's Complaint fails to plead all requisite elements of the statutory definition of the "pen register."

### D. <u>The Software is Not a "Pen Register"</u>

To state a claim under CIPA § 638.51(a) prohibiting installation and use of pen registers, Plaintiff must demonstrate that the Software allegedly installed by Valnet qualifies as a "pen register" as defined under CIPA § 638.50(b). Under the plain language of the statute, to be deemed a "pen register" the Software would need to satisfy several statutory requirements: it must be a [i] "device or process that [ii] records or decodes [iii] dialing, routing, addressing, or signaling information [iv] transmitted by an instrument or facility from which a wire or electronic communication is transmitted, [v] but not the contents of a communication." CIPA § 638.50(b). Interpreting the "pen register" clause of CIPA, some federal courts allocate disproportionate weight to the *data* transferred by the technology rather than focusing on the nature of the technology itself.[3] However, even assuming that what matters in the definition of the pen register is primarily the *data transferred* – Plaintiff's claim still fails because the data transferred by the Software is not covered by CIPA.

---

[3] *See e.g., Riganian v. LiveRamp Holdings, Inc.*, 2025 WL 2021802, at *11 (N.D. Cal. July 18, 2025) (holding a process can take many forms and can be a software that identifies consumers); *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 WL 5102709, at *3–4 (N.D. Cal. Dec. 12, 2024) (holding internet browser trackers can constitute pen registers); *see also Greenley v. Kochava, Inc.*, 684 F.Supp.3d 1024, 1050 (S.D. Cal. 2023) (holding that in determining whether a device is a pen register, courts must look to the type of information being collected and not the device or process).

**1. The Data Transferred by The Software Is Not Covered By CIPA**

To meet the statutory definition of a "pen register" the Software must record data that constitutes "***dialing, routing, addressing, or signaling information***," but not the "***contents of a communication***." CIPA § 638.50(b). As explained below, Plaintiff does not – and cannot – plead the facts establishing that the Software transmits any such data.

Plaintiff's allegations – though deficient as explained below – purport to claim that the Software allows Third Parties to combine data shared by the Software with their own data sets, which form a "unique ***fingerprint*** that allows for cross-site tracking and behavioral profiling." Complaint ¶ 69. These fingerprints are purportedly a compilation of some "additional data points" sent by the Software and the data held by Third Parties. *Id.*

But Plaintiff cannot argue that so-called "fingerprinting" constitutes recording or decoding "dialing, routing, addressing, or signaling information." Almost exactly the same allegation was made by the plaintiff in *Kishnani v. Royal Caribbean Cruises Ltd.*,[4] and this Court explained that "[a]ny '***fingerprint***' that reveals biographical information is 'the ***content***' of any communication between visitor and Website, and thus, the claim and the case cannot survive […] because, if that type of information is collected, the statute ceases to apply (statute does not apply to the contents of a communication." Cal. Penal Code § 638.50(b)." *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *4 (N.D. Cal. 2025) (emphasis added). Accordingly, "fingerprinting" or augmenting of data sets by Third Parties is not covered by CIPA. Plaintiff's claims pertaining to the disclosure of fingerprints fail, as those are the "contents of a communication," and not the type of data covered by CIPA.

Furthermore, Plaintiff conflates the data actually transmitted by the Software with the data held by Third Parties. CIPA's definition of "pen register" covers only the data actually transmitted by the pen register device, not data that can be potentially linked by Third Parties. Plaintiff's allegations about what happens to the data after transmission to Third Parties are thus irrelevant. Data solely held by Third Parties cannot constitute "dialing, routing, addressing, or

[4] In *Kishnani*, the plaintiff alleged that the fingerprinting was created by combining data collected by a "trap and trace device," rather than a "pen register."

signaling information" covered by CIPA. Similarly, Plaintiff cannot claim that Device Metadata like the type of browser, screen size/resolution, or time zone can meet the definition of the "dialing, routing, addressing, or signaling information" because it is not akin to dialed telephone numbers.

**2. Plaintiff Has No Protected Privacy Interest In Her IP Addresses**

Plaintiff alleges that IP addresses "constitute dialing, routing, addressing, or signaling information."[5] To establish her claim that Valnet violated her right of privacy, Plaintiff must establish a specific, legally protected privacy interest in her computer's IP address, and must demonstrate that she has a reasonable expectation of privacy. However, Plaintiff has not alleged any protected privacy interest in IP addresses.

Oddly, Plaintiff cites only to Europe's General Data Protection Regulation ("GDPR") to support her suggestion that IP addresses are considered "personal data." Complaint ¶ 61. But the GDPR is obviously not applicable to Plaintiff, a resident of California, and, as explained below, California law does not recognize a privacy interest in IP addresses. Even if it is assumed that the ability of a website operator to obtain a user's IP address constitutes operating a pen register, the issue here is whether, when Plaintiff chose to access the Website, she had a reasonable expectation in the privacy of her computer's IP address. Based on relevant authorities, the answer is no.

It is well established in the Ninth Circuit (and across the country) that "there is no legally protected privacy interest in IP addresses." *Kishnani*, 2025 WL 1745726, at *4; *see also, Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) ("Internet users have no expectation of privacy in ... IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information."); *see also, Ji v. Naver Corp.*, 2022 WL 4624898, at *7 (N.D. Cal. Sept. 30, 2022) (collection of "***user and device identifiers***" could not give rise to "a privacy injury") (emphasis added); *Malibu Media, LLC v. Doe*, 2019 WL 2537671, at *3 (D. Conn. June 20, 2019) ("[T]here is no expectation of privacy in . . . an IP address."); *Digital Shape Techs., Inc.*

[5] Complaint ¶ 48. As explained above, Plaintiff fails to allege the precise scope of the data she claims constitutes "dialing, routing, addressing, or signaling information."

*v. Glassdoor, Inc.*, 2016 WL 5930275, at *4 (N.D. Cal. Oct. 12, 2016) (this Court held that the plaintiff had no "expectation of privacy with respect to her email address or IP address.") (citing *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008)); *United States v. Kidd*, 394 F. Supp. 3d 357, 362 (S.D.N.Y. 2019) ("[M]ost courts have adopted a categorical approach holding that users have no reasonable expectation of privacy in such IP address information."); *Cooper v. Bonobos, Inc.*, 2022 WL 170622, at *4 (S.D.N.Y. Jan. 19, 2022) (disclosure of "less sensitive data" such as "addresses, phone numbers, . . . email addresses, and IP addresses" does not constitute an injury in fact); *United States v. Jean*, 207 F. Supp. 3d 920, 928–29 (W.D. Ark. 2016) (An "IP address can be determined with relative ease because it is always attached, like a 'return address,' to every 'envelope' of information exchanged back and forth by computers that are actively communicating with each other over the internet."), *aff'd*, 891 F.3d 712 (8th Cir. 2018).The same is true here – Plaintiff has no protectable privacy interest in IP addresses.

Plaintiff cites *Greenley v. Kochava, Inc.*, in the Complaint, as an authority supporting this argument, but that case is clearly distinguishable. *Greenley* was an action against a data broker and pertained to a different data set than IP addresses. 684 F.Supp.3d at 1035. Valnet is not a data broker, and unlike the defendant in *Greenley*, Valnet uses the Software to operate its Website rather than to "package[…] data and [sell] it to clients for advertising purposes." *Id.* Moreover, in *Greenley* the plaintiff alleged that the defendant collected his "geolocation, communications related to his personal characteristics, mode of living, purchase decisions, personal choices, app selections, spending habits, and click choices" – not IP addresses. 684 *Id.* at 1037.

Here, Plaintiff purports to allege collection of IP addresses by Valnet, which are not the same as the information at issue in *Greenley*. *Id.* at 1189 (noting precise geolocation data and IP addresses are "apples and oranges for privacy purposes"). Furthermore, *Greenley* was found by a California state court to be inconsistent with California courts' interpretation of CIPA. *See Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Cal. Super. Mar. 13, 2024) (rejecting *Greenley* as distinguishable from an IP address collection case and finding it out of step with "the current

interpretation governing state law"). Therefore, Plaintiff's claims that her privacy was invaded by the disclosure of her IP addresses are baseless.

### 3. Pen Register Statutes Do Not Apply To IP Addresses

California state courts interpreting CIPA have held that CIPA's pen register statute does not criminalize the process by which all websites communicate with all users who choose to access them. *See Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370, at *4 (Cal. Super. Sep. 09, 2024). And numerous courts analyzing the federal analogue to CIPA – that has an *identical* definition of a "pen register" – have held that collection of IP addresses does not violate the federal Pen Register Act because the collection of IP addresses is necessary for the internet to operate.[6] *See Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419, at *11 (C.D. Cal. May 29, 2007); *see also Capitol Recs. Inc. v. Thomas-Rasset*, 2009 WL 1664468, at *3 (D. Minn. June 11, 2009) ("[i]f [the Pen Register Act] did apply [to the collection of IP addresses], then the Internet could not function because standard computer operations require recording IP addresses so parties can communicate with one another over the Internet."); *Malibu Media, LLC v. Pontello*, 2013 WL 12180709, at *1 (E.D. Mich. Nov. 19, 2013) (same).

This Court should consider these persuasive decisions regarding CIPA's virtually identical federal analogue to this case and find that the collection of IP addresses is necessary for the Website to function, and does not violate CIPA.

### 4. CIPA's "Pen Register" Statute Should Be Construed Narrowly.

Plaintiff urges this Court to construe CIPA "in accordance with the interpretation that provides the ***greatest privacy protection.***" Complaint ¶¶ 29, 30 (*citing Matera v. Google Inc.*, 2016 WL 8200619, at *4 (N.D. Cal. Aug. 12, 2016)). But *Matera* addressed neither "pen registers," nor

---

[6] CIPA's definition of "pen register" was copied almost verbatim from the federal Pen Register statute. *See* 18 U.S.C. § 3127(3). Though not binding, interpretations of similar federal laws are certainly persuasive in interpreting California law. *See, e.g., Bell v. Farmers Ins. Exch.*, 87 Cal. App. 4th 805, 817 (2001) ("California courts have recognized that ... authorities construing [similar] federal statutes provide persuasive guidance to state courts.").

IP addresses.[7] As explained above, Plaintiff has no legally protected privacy interest in her IP addresses, and pen register statutes should not apply to IP addresses.

Assuming for the sake of argument that Plaintiff could have a privacy interest in her IP addresses (and she does not), CIPA should not be interpreted expansively here as Plaintiff suggests, because it would be inconsistent with the plain language of the statute. While some provisions of CIPA explicitly state that they apply only to telephone communications,[8] the definition of a "pen register" under CIPA does not reference landlines or telephones. This omission is the primary reason some courts have held that the statutory language is unambiguous regarding the expansive scope of the pen register provision, and that no further analysis—such as legislative history—is required. *See e.g.*, *Riganian*, 2025 WL 2021802, at *11 ("[I]f the drafters of Section 638.50 intended for 'pen register' to be limited to telephone technologies, they knew how to say so."). However, even though the definition of the "pen register" does not explicitly mention landlines, all elements of the definition are tailored for the types of devices that have been historically understood to be pen registers – physical devices installed on a landline telephone to make a record of the phone numbers dialed from that phone and used by law enforcement for surveillance. *See Smith v. Maryland*, 442 U.S. 735, 736 n. 1 (1979) ("A pen register is a mechanical device that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released."); *see also People v. Larkin*, 194 Cal. App. 3d 650, 653 n. 2 (1987) ("A pen register is a mechanical device connected to a telephone number to monitor dialing activity. It registers the phone numbers dialed to make outgoing calls,

---

[7] The *Matera* Court in fact held that § 631(a)'s first prong is "limited to communications passing over 'telegraph or telephone' wires, lines, or cables." *Matera*, 2016 WL 8200619, at *18.

[8] *See Licea v. Cinmar*, LLC, 659 F. Supp. 3d 1096, 1104–05 (C.D. Cal. 2023) (examining the first clause of Cal. Penal Code § 631(a), referring to the use of a "telegraph or telephone wire"); *Licea v. Vitacost.com, Inc*., 683 F. Supp. 3d 1118, 1124 (S.D. Cal. 2023) (examining Cal. Penal Code § 632.7(a), which contains the statutory language of "landline telephone"); *Augustine v. Lenovo (United States), Inc*., 2023 WL 4938050, at *4 (S.D. Cal. Aug. 2, 2023) ("The Court finds that the plain language of section 632.7 limits the applicability of the statute to communications between certain types of telephones, not the internet."); *Kauffman v. Papa John's Int'l, Inc*., 2024 WL 171363, at *9 (S.D. Cal. Jan. 12, 2024) ("The Court finds that the plain language of section 632.7 limits the applicability of the statute to communications between certain types of telephones, not the internet ....").

including the dates and times the receiver is picked up and replaced."). Indeed, Plaintiff herself agrees that, "[h]istorically, law enforcement used 'pen registers' to record the numbers of outgoing calls from a particular telephone line." Compl. ¶ 27.

CIPA's "pen register" definition comprises several elements outlined above that support the strict interpretation of the statutory wording. To be a "pen register" the Software would need to "***record or decode***" data "***transmitted by an instrument or facility***" Cal. Penal Code § 638.50(b) (emphasis added). Plaintiffs, like in this case, typically simply allege that smartphones and computers are "instrument[s] or facilit[ies]." *Id.* However, neither the Complaint, nor the authorities cited by Plaintiff, offer any analysis explaining why software that transmits data should be deemed to "record or decode" such data, and why a browser that sends such data should be considered "***an instrument or facility.***" *See e.g., Shah v. Fandom, Inc.*, 754 F.Supp.3d 924, 928 (N.D.Cal., 2024) (offering no explanation for why the "instrument or facility" is a "computer[ ] or smartphone[ ].")

Other cases cited by Plaintiff in support of an expansive interpretation of CIPA that would encompass online tracking technologies (Complaint ¶ 29) are unpersuasive. *Lesh v. Cable News Network, Inc.* is an out-of-circuit decision applying California law based on then-existing interpretations by California courts, which have since evolved. 767 F. Supp. 3d 33 (S.D.N.Y. 2025). *Greenley* is likewise inapposite. *Greenley* was decided at the early stages of "pen register" litigation under CIPA. The *Greenley* court observed that "it seems no court has interpreted [the pen register] provision of CIPA." *Greenley*, 684 F. Supp. 3d at 1050. That is no longer the case.

Moreover, there is a growing corpus of law questioning an expansive interpretation of CIPA because it would criminalize otherwise legal internet operations. *See e.g., Sanchez v. Cars.com Inc.*, 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025) (interpreting CIPA narrowly in light of legislative history and the plain meaning of the statute).[9] For example, in the recent case *Sanchez v. Cars.com Inc.,* the California Superior court held that "'pen register' and 'tra[p] and trace devices' refer to devices or process that are used to record or decode dialing, routing,

[9] *But see Riganian*, 2025 WL 2021802, at *12 (disagreeing with the *Sanchez* court's reliance on legislative history rather than the language of the statute).

addressing or signaling information from telephone numbers, and ***not internet communications such as websites***.") (emphasis added). *Id.* In *Licea*, the court likewise advocated for the narrow interpretation of the statute that would turn the tide of lawsuits targeting legitimate business operations. 2024 WL 1698147, at *4 (the Court found that "public policy strongly disputes" a broad interpretation of CIPA because it would render "every single entity" whose website is "voluntarily visited by a potential plaintiff … as a [CIPA] violator" and "potentially disrupt a large swath of internet commerce").

A narrow statutory interpretation of CIPA is also supported by the structure of the statute. Indeed, if interpreted in combination with other CIPA provisions, it is hardly possible to reach a conclusion that "pen register" can be anything but a physical device installed on a telephone line. Like its federal counterpart, federal Pen Register Act, CIPA also contains a provision requiring a court order authorizing the use of a pen register or trap and trace device to specify, the "***physical location of the telephone line*** to which the pen register or trap and trace device is to be attached." CIPA § 638.52(d)(3) ("An order issued pursuant to subdivision (b) shall specify ***all of the following***: […] [t]he number and, if known, ***physical location of the telephone line*** to which the pen register or trap and trace device is to be attached and, in the case of a trap and trace device, the geographic limits of the trap and trace order.") (emphasis added). Therefore, in order to obtain an order to install a pen register under CIPA, the authorizing order must contain ***all*** of the required elements, including the physical location of the telephone line. This discrete requirement makes clear that the corpus of state law pertaining to pen registers was not designed to cover internet communications, nor is it suited to do so.

Furthermore, CIPA's definition of "pen register" was copied almost verbatim from federal law. *See* 18 U.S.C. § 3127(3). It is well established that the federal Pen Register Act's definitions pertain to telephone lines, and not the operation of the websites. *See Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995) (holding definitions at issue "include only devices that are attached to a telephone line.")

The *Sanchez* court analyzed both federal and state statutes and held that similarities are not coincidental. *See Sanchez*, 2025 WL 487194, at *3.

Finally, as rightly pointed in *Sanchez,* there is no controlling published authority in California on the issue of whether internet software constitute "pen registers" or "trap and trace devices" within the meaning of CIPA. *Id*. This court is therefore not bound to follow any of the authorities supporting an expansive interpretation of CIPA's pen register provision, and should reject the expansive interpretation advanced by Plaintiff's Complaint.

**E. <u>Plaintiff Fails to Plead All Requisite Elements Of a "Pen Register"</u>**

Even assuming that the Software allegedly installed by Valnet could somehow be considered a "pen register" (which, as explained above, it is not), Plaintiff's Complaint must still be dismissed because it fails to adequately allege all five elements necessary to meet the statutory definition of a "pen register":

A "pen register" is a [i] "device or process that [ii] records or decodes [iii] dialing, routing, addressing, or signaling information [iv] transmitted by an instrument or facility from which a wire or electronic communication is transmitted, [v] but not the contents of a communication." CIPA § 638.50(b).

Plaintiff's lengthy pleading, oversaturated with technology explanations unrelated to the statutory definition of a "pen register," fails to allege what precise data set she contends constitutes "dialing, routing, addressing, or signaling information," or how the Software satisfies the other elements of the statutory definition of a "pen register." With allegations concerning the scope of transferred data scattered throughout the Complaint, Plaintiff fails to clearly allege what specific data she believes was disclosed by the Software. Nowhere in the complaint does Plaintiff offer an exhaustive list of the data she believes was actually transmitted by the Software, or specify which data was held by third parties and allegedly "combined" with the data transferred by the Software. Moreover, to the extent Plaintiff alleges that her privacy was somehow invaded by so-called "fingerprinting," Plaintiff fails to allege this data is "dialing, routing, addressing, or signaling information," and not "contents of a communication."

Thus, Plaintiff's Complaint fails to state a claim for this reason as well, and must be dismissed. *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011) (holding the Court may dismiss a claim "where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim."); *see also*, *Martin v. Sephora USA, Inc*., 2023 WL 2717636, at *5 (E.D.Cal., 2023) (finding dismissal is proper "if the factual elements of a cause of action are present but are scattered throughout the complaint and not organized into a 'short and plain statement of the claim[.]'").

## V. CONCLUSION

For the foregoing reasons, the Complaint should be dismissed because: (i) CIPA's "pen register" definition does not apply to software installed on users' web browsers; (ii) the data allegedly transmitted via the Software, such as IP addresses and device metadata, is not actionable under CIPA; and (iii) Plaintiff, in any event, fails to adequately plead each element of a "pen register." Accordingly, the Complaint should be dismissed with prejudice, and without leave to amend.

DATED: August 7, 2025

RESPECTFULLY SUBMITTED,

LUCY HOLMES PLOVNICK
MITCHELL SILBERBERG & KNUPP LLP

By: */s/ Lucy Holmes Plovnick*
Lucy Holmes Plovnick
Attorney for Valnet Inc. and Valnet US Inc. d/b/a Screenrant.com