KEVIN E. GAUT (SBN 117352)
keg@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

LUCY H. PLOVNICK (*pro hac vice*) (DC Bar No. 488752)
lhp@msk.com
MITCHELL SILBERBERG & KNUPP LLP
1818 N. Street NW, 7th Floor
Washington, DC 20036
Telephone: (202) 355-7900
Facsimile: (202) 355-7899

Attorneys for Valnet Inc. and Valnet US Inc.
d/b/a Screenrant.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DASSAH MAKETA, and BRYCE PEPPERS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VALNET INC. and VALNET U.S., INC. d/b/a SCREENRANT.COM,<br><br>Defendants. | CASE NO. 3:25-CV-05517-RS<br><br>Hon. Richard Seeborg, District Judge<br><br>**DEFENDANTS VALNET INC. AND VALNET US INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**<br><br>Date: October 16, 2025<br>Time: 1:30 p.m.<br>Courtroom 3 |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

**PLEASE TAKE NOTICE** that on October 16, 2025 at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Richard Seeborg in Courtroom 3 – 17th Floor of the United States District Court for the Northern District of California, San Francisco Courthouse, located at 450 Golden Gate Ave., San Francisco, CA 94102, Defendants Valnet Inc. and Valnet US Inc. d/b/a Screenrant.com (collectively, "Valnet") will and do hereby move, pursuant to Rule 2(b)(6) of the Federal Rules of Civil Procedure, for an Order dismissing the First Amended Complaint of Plaintiffs Dassah Maketa and Bryce Peppers ("Plaintiffs") in its entirety, without leave to amend.

This Motion is made on the grounds that the First Amended Complaint fails to state a claim for relief under Federal Rule of Civil Procedure Rule 12(b)(6).

This Motion is based upon this Notice of Motion and Memorandum of Points and Authorities; all pleadings and other records on file in this action; any other matters that may be judicially noticed; and such further evidence and arguments as may be presented at or before the hearing on this Motion.

DATED: September 11, 2025

RESPECTFULLY SUBMITTED,

LUCY HOLMES PLOVNICK
MITCHELL SILBERBERG & KNUPP LLP

By: */s/ Lucy Holmes Plovnick*
Lucy Holmes Plovnick
Attorney for Valnet Inc. and Valnet US Inc. d/b/a Screenrant.com

**TABLE OF CONTENTS**


MEMORANDUM OF POINTS AND AUTHORITIES .......... 8

I. PRELIMINARY STATEMENT .......... 8

II. FACTUAL BACKGROUND .......... 9

A. Valnet and its Websites .......... 9

B. Relevant Allegations in the FAC .......... 9

C. Data Transmission By Pixels .......... 10

III. LEGAL STANDARD .......... 11

IV. PLAINTIFFS' FAC SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) BECAUSE IT FAILS AS A MATTER OF LAW .......... 12

D. The Software is Not a "Pen Register" .......... 12

1. The Data Transferred By The Software Is Not Covered By CIPA .......... 13

2. Plaintiffs Have No Protected Privacy Interest In Their IP Addresses .......... 14

3. Pen Register Statutes Do Not Apply To IP Addresses .......... 16

4. CIPA's "Pen Register" Statute Should Be Construed Narrowly. .......... 16

E. Plaintiffs Fail to Plead All Requisite Elements Of a "Pen Register" .......... 20

V. CONCLUSION .......... 21

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995) .......... 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 11

*Augustine v. Lenovo (United States), Inc.*, 2023 WL 4938050 (S.D. Cal. Aug. 2, 2023) .......... 17

*Bell v. Farmers Ins. Exch.*, 87 Cal. App. 4th 805 (2001) .......... 16

*Capitol Recs. Inc. v. Thomas-Rasset*, 2009 WL 1664468 (D. Minn. June 11, 2009) .......... 16

*Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370 (Cal. Super. Sep. 09, 2024) .......... 16

*Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419 (C.D. Cal. May 29, 2007) .......... 16

*Cooper v. Bonobos, Inc.*, 2022 WL 170622 (S.D.N.Y. Jan. 19, 2022) .......... 15

*Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010) .......... 11

*Digital Shape Techs., Inc. v. Glassdoor, Inc.*, 2016 WL 5930275 (N.D. Cal. Oct. 12, 2016) .......... 14

*Greenley v. Kochava, Inc.*, 684 F.Supp.3d 1024 (S.D. Cal. 2023) .......... 12, 15, 18

*Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182 (N.D. Cal. 2020) .......... 14

*Hinds Invs., L.P. v. Angioli*, 654 F.3d 846 (9th Cir. 2011) .......... 21

*In re Google Inc.*, 2013 WL 5423918 (N.D. Cal. Sep. 26, 2013) .......... 16

*Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022) .......... 16

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Ji v. Naver Corp.*,
2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) .......... 14

*Kauffman v. Papa John's Int'l, Inc.*,
2024 WL 171363 (S.D. Cal. Jan. 12, 2024) .......... 17

*Kishnani v. Royal Caribbean Cruises Ltd.*,
2025 WL 1745726 (N.D. Cal. 2025) .......... 13, 14

*Lesh v. Cable News Network, Inc.*,
767 F. Supp. 3d 33 (S.D.N.Y. 2025) .......... 18

*Licea v. Cinmar*,
LLC, 659 F. Supp. 3d 1096 (C.D. Cal. 2023) .......... 17

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Super. Mar. 13, 2024) .......... 15, 19

*Licea v. Vitacost.com, Inc.*,
683 F. Supp. 3d 1118 (S.D. Cal. 2023) .......... 17

*Malibu Media, LLC v. Doe*,
2019 WL 2537671 (D. Conn. June 20, 2019) .......... 14

*Malibu Media, LLC v. Pontello*,
2013 WL 12180709 (E.D. Mich. Nov. 19, 2013) .......... 16

*Martin v. Sephora USA, Inc.*,
2023 WL 2717636 (E.D. Cal. 2023) .......... 21

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) .......... 16

*Matlean v. Fed. Hous. Fin. Agency*,
2019 WL 2620716 (C.D. Cal. May 24, 2019) .......... 11

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .......... 12

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) .......... 8

*People v. Larkin*,
194 Cal. App. 3d 650 (1987) .......... 17

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Produce Pay, Inc. v. Izguerra Produce, Inc.*,
39 F.4th 1158 (9th Cir. 2022) .......... 11

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .......... 16, 17

*Riganian v. LiveRamp Holdings, Inc.*,
2025 WL 2021802 (N.D. Cal. July 18, 2025) .......... 12, 17, 18, 19

*Sanchez v. Cars.com Inc.*,
2025 WL 487194 (Cal. Super. . Jan. 27, 2025) .......... 18, 19, 20

*Shah v. Fandom, Inc.*,
754 F.Supp.3d 924 (N.D. Cal. 2024) .......... 18

*Shroyer v. New Cingular Wireless Servs., Inc.*,
622 F.3d 1035 (9th Cir. 2010) .......... 11

*Smith v. Maryland*,
442 U.S. 735 (1979) .......... 17

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) .......... 11, 12

*Swarts v. Home Depot, Inc.*,
689 F. Supp. 3d 732 (N.D. Cal. 2023) .......... 8

*United States v. Jean*,
207 F. Supp. 3d 920 (W.D. Ark. 2016), *aff'd*, 891 F.3d 712 (8th Cir. 2018) .......... 15

*United States v. Kidd*,
394 F. Supp. 3d 357 (S.D.N.Y. 2019) .......... 15

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) .......... 11

### Statutes

18 U.S.C.
§ 3127(3) .......... 16, 20

Cal. Penal Code
§ 631(a) .......... 8, 16, 17
§ 632.7 .......... 17
§ 632.7(a) .......... 17

Mitchell Silberberg & Knupp LLP

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

§ 638.50 .................... 17
§ 638.50(b) .................... 10, 12, 13, 18, 20
§ 638.51 .................... 8
§ 638.51(a) .................... 8, 10, 12
§ 638.52(d)(3) .................... 19

### OTHER AUTHORITIES

Fed. R. Civ. P.
12(b)(6) .................... 9, 11, 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Plaintiffs' First Amended Complaint ("FAC") still falls short of sufficiently pleading that Valnet US Inc. and Valnet Inc. (collectively, "Valnet") violated the California Invasion of Privacy Act, Cal. Pen. Code § 631 *et seq* ("CIPA"). Even as amended, Plaintiffs' claims under CIPA cannot succeed as a matter of law, because Plaintiffs still fail to allege facts demonstrating that Valnet's use of the cookies on its own website can constitute a "pen register."

As before, this action makes novel claims to reinterpret an old statute plainly not intended to cover the circumstances at issue. Here, Plaintiffs yet again allege that collecting and disclosing website visitors' internet protocol ("IP") addresses or similar data violates the pen register provision in the California Penal Code. That law was originally enacted in 1967 to protect individuals from unauthorized surveillance and interception of communications, and was never intended to include disclosure of website information, such as IP addresses and device metadata, as Plaintiffs now allege. Plaintiffs' "theory" alleging that website cookies are "pen registers" is an attempt to stretch CIPA far beyond its intended bounds. The majority of California courts interpreting the statute have dismissed attempts to apply the CIPA provision prohibiting unauthorized *wiretapping*, Cal. Pen. Code § 631(a), to website advertising and analytics technologies.[1] The "pen register" claim at issue here is an attempted work-around, aiming to convince this Court to apply a different provision of CIPA, Cal. Pen. Code § 638.51, to website cookies. This effort should also fail.

Plaintiffs Dassah Maketa and Bryce Peppers bring this FAC alleging one count – violation of Cal. Penal Code § 638.51(a). Plaintiffs seek to hold Valnet liable for thousands of dollars in statutory damages solely because Valnet allegedly collects visitors' IP addresses and device metadata through its ScreenRant website, https://screenrant.com/ (the "ScreenRant Website"), and Polygon website, https://polygon.com/ (the "Polygon Website," together with the ScreenRant Website, the "Websites"), which provide movie, television, and gaming reviews and information.

---

[1] *See, e.g., Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112 (S.D. Cal. 2023); *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732 (N.D. Cal. 2023).

Plaintiffs' FAC should be dismissed under Rule 12(b)(6) because it fails to state a claim as a matter of law under CIPA§ 638.51 for the following reasons: (1) the Software described in the FAC is not a "pen register," as defined by CIPA; (2) and Plaintiffs fail to plead all requisite statutory elements of a "pen register."

## II. FACTUAL BACKGROUND[2]

### A. Valnet and its Websites

Valnet is a digital media company that owns and operates a portfolio of popular entertainment and lifestyle websites. One of its flagship sites is the ScreenRant Website, which is dedicated to covering movies, television, video games, and pop culture news. ScreenRant offers a mix of breaking entertainment news, reviews, trailers, interviews, and opinion pieces. In 2025, Valnet acquired Polygon, a website that focuses on video games and gaming news.

Valnet is not a data broker. As explained by Plaintiffs, a data broker is typically defined as a business that collects, aggregates, and sells or shares personal data about consumers. FAC ¶ 157. Data brokers do not usually have a direct relationship with users.

Valnet, by contrast, is a digital media publisher that monetizes its Websites primarily through advertising revenue. While Valnet may facilitate or participate in behavioral advertising ecosystems (where third parties collect data), Valnet is not a data broker.

### B. Relevant Allegations in the FAC

Plaintiffs' claim arises solely from Valnet's alleged installation of two types of software– the ADNXS Tracker, and the OpenX Tracker (collectively, the "Software") on the internet browsers of users who visit the Websites. *Id.* ¶¶ 1, 3. Plaintiffs allege that the Software allows Microsoft Corporation and OpenX Technologies, Inc. (collectively, the "Third Parties") to collect Website users' IP addresses and some other information identifying the device ("Device Metadata"). *Id.* ¶¶ 3-4. Plaintiff Maketa alleges she regularly visits the ScreenRant Website on her desktop browser, and visited it as long ago as 2018 and as recently as April 2025. *Id.* ¶ 218. When she visited the ScreenRant Website–she alleges–the Software was installed on her browser,

[2] Unless otherwise noted, these factual allegations are taken from the FAC and are presumed true solely for purposes of this Motion.

which allowed Third Parties to collect her "IP address, Device Metadata, and set a cookie with a unique user ID[.]" *Id.* ¶¶ 219-20. Plaintiff Peppers makes similar tracking allegations related to his claimed visits to the Polygon Website.

Plaintiffs further allege that because the Software captures Website visitors' "routing, addressing, or signaling information," the Software constitutes a "pen register" under Section 638.50(b) of CIPA. *Id.* ¶¶ 6, 25, 247-48. Plaintiffs also allege that by installing and using the Software, Valnet violated CIPA § 638.51(a), which prohibits installation or use of pen registers. *Id.* ¶¶ 248, 254. Plaintiffs' FAC is not short on lengthy technical explanations, images, and charts purporting to explain the technology behind IP addresses, online ad bidding, the role of data brokers, and numerous other allegations that are not relevant to the question of why the Software qualifies as a "pen register" under CIPA.

The statutory definition of a "pen register" comprises several elements: [i] a pen register can be only a "device or process that [ii] records or decodes [iii] dialing, routing, addressing, or signaling information [iv] transmitted by an instrument or facility from which a wire or electronic communication is transmitted, [v] but not the contents of a communication." CIPA § 638.50(b).

Plaintiffs allege that the Software constitutes either a "process" because it "identifies consumers, gathers data, and correlates that data[,]" or a "device" because "in order for software to work, it must be run on some kind of computing device." FAC ¶¶ 149-50. And Plaintiffs further allege that "[a] public IP address is 'addressing' information because it determines the general geographic coordinates of the user who is accessing a website[,]" and it is also "'routing' or 'signaling' information because it is sending or directing the user's communication from the router in their home or work to the website they are communicating with, and ensuring that "emails, websites, streaming content, and other data reaches you correctly." *Id.* ¶¶ 49-51.

The FAC contains no allegations explaining how Device Metadata (such as device type, browser type, etc.) constitutes "dialing, routing, addressing, or signaling information."

### C. <u>Data Transmission By Pixels</u>

The Software in question are two pixels operated by Third Parties: the ADNXS Tracker and OpenX Tracker. The first time a user visits one of the Websites, the user's browser sends an

HTTP request to the Website's server, and the server sends an HTTP response with directions to install the Software on the user's browser. The Software, in turn, instructs the user's browser to send the user's IP address and Device Metadata – which Third Parties receive through the Software. *Id.* ¶¶ 75, 116. The process described in the FAC alleges that the data is "transmitted" between the Software, user's browser and the Third Party servers. Plaintiffs do not (and cannot) allege that Software records any data – indeed the Software is not a device capable of data storage.

## III. LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also, Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) ("[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter to state a facially plausible claim to relief.").

When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Matlean v. Fed. Hous. Fin. Agency*, 2019 WL 2620716, at *2 (C.D. Cal. May 24, 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). But a court does not need to accept as true any "legal conclusion couched as a factual allegation" (*Iqbal*, 556 U.S. at 678, internal quotation marks omitted) and does not need to make "conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) (internal citations omitted).

On a motion to dismiss, a court may consider documents attached to the complaint, documents incorporated by reference in the complaint, or documents subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A court is not required to accept as true allegations that contradict documents that are attached to the complaint, incorporated by reference in the complaint, or subject to judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010); *Produce Pay, Inc. v. Izguerra Produce, Inc.*, 39 F.4th 1158, 1161

(9th Cir. 2022); *see also, Sprewell*, 266 F.3d at 988 (on a motion to dismiss, "allegations that contradict matters properly subject to judicial notice" are insufficient).

## IV. PLAINTIFFS' FAC SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) BECAUSE IT FAILS AS A MATTER OF LAW

Plaintiffs' FAC fails to state a claim as a matter of law under CIPA for two independently sufficient reasons. *First*, the Software described in the FAC is not a "pen register" as defined by CIPA because (i) the data transferred by the Software is not covered by CIPA; (ii) Plaintiffs have no protected privacy interest in their IP addresses; (iii) pen register statutes do not apply to IP addresses; and (iv) CIPA should be construed narrowly and not applied in this context. *Second*, Plaintiffs' FAC still fails to plead all requisite elements of the statutory definition of the "pen register."

### D. <u>The Software is Not a "Pen Register"</u>

To state a claim under CIPA § 638.51(a) prohibiting installation and use of pen registers, Plaintiffs must demonstrate that the Software allegedly installed by Valnet qualifies as a "pen register" as defined under CIPA § 638.50(b). Under the plain language of the statute, to be deemed a "pen register" the Software would need to satisfy several statutory requirements: it must be a [i] "device or process that [ii] records or decodes [iii] dialing, routing, addressing, or signaling information [iv] transmitted by an instrument or facility from which a wire or electronic communication is transmitted, [v] but not the contents of a communication." CIPA § 638.50(b). Interpreting the "pen register" clause of CIPA, some federal courts allocate disproportionate weight to the *data* transferred by the technology rather than focusing on the nature of the technology itself.[3] However, even assuming that what matters in the definition of the pen register

[3] *See e.g., Riganian v. LiveRamp Holdings, Inc.*, 2025 WL 2021802, at *11 (N.D. Cal. July 18, 2025) (holding a process can take many forms and can be a software that identifies consumers); *Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 WL 5102709, at *3–4 (N.D. Cal. Dec. 12, 2024) (holding internet browser trackers can constitute pen registers); *see also Greenley v. Kochava, Inc.*, 684 F.Supp.3d 1024, 1050 (S.D. Cal. 2023) (holding that in determining whether a device is a pen register, courts must look to the type of information being collected and not the device or process).

is primarily the *data transferred* – Plaintiffs' claim still fails because the data transferred by the Software is not covered by CIPA.

**1. The Data Transferred By The Software Is Not Covered By CIPA**

To meet the statutory definition of a "pen register" the Software must record data that constitutes "***dialing, routing, addressing, or signaling information***," but not the "***contents of a communication***." CIPA § 638.50(b). As explained below, Plaintiffs do not – and cannot – plead the facts establishing that the Software transmits any such data.

Plaintiffs' allegations – though deficient as explained below – purport to claim that the Software allows Third Parties to combine data shared by the Software with their own data sets, which form a "unique ***fingerprint*** that allows for cross-site tracking and behavioral profiling." FAC ¶ 69. These fingerprints are purportedly a compilation of some "additional data points" sent by the Software and the data held by Third Parties. *Id.*

But Plaintiffs cannot argue that so-called "fingerprinting" constitutes recording or decoding "dialing, routing, addressing, or signaling information." Almost exactly the same allegation was made by the plaintiff in *Kishnani v. Royal Caribbean Cruises Ltd.*,[4] and this Court explained that "[a]ny '***fingerprint***' that reveals biographical information is 'the ***content***' of any communication between visitor and Website, and thus, the claim and the case cannot survive […] because, if that type of information is collected, the statute ceases to apply (statute does not apply to the contents of a communication." *Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *4 (N.D. Cal. 2025) (emphasis added). Accordingly, "fingerprinting" or augmenting of data sets by Third Parties is not covered by CIPA. Plaintiffs' claims pertaining to the disclosure of fingerprints fail, as those are the "contents of a communication," and not the type of data covered by CIPA.

Furthermore, Plaintiffs conflate the data actually transmitted by the Software with the data held by Third Parties. CIPA's definition of "pen register" covers only the data actually transmitted by the pen register device, not data that can be potentially linked by Third Parties.

[4] In *Kishnani*, the plaintiff alleged that the fingerprinting was created by combining data collected by a "trap and trace device," rather than a "pen register."

Plaintiffs' allegations about what happens to the data after transmission to Third Parties are thus irrelevant. Data solely held by Third Parties cannot constitute "dialing, routing, addressing, or signaling information" covered by CIPA. Similarly, Plaintiffs cannot claim that Device Metadata like the type of browser, screen size/resolution, or time zone qualifies as "dialing, routing, addressing, or signaling information" because it is not akin to dialed telephone numbers.

### 2. Plaintiffs Have No Protected Privacy Interest In Their IP Addresses

Plaintiffs allege that IP addresses constitute "dialing, routing, addressing, or signaling information."[5] To establish the claim that Valnet violated their privacy rights, Plaintiffs must establish a specific, legally protected privacy interest in their computers' IP addresses, and must demonstrate that they had a reasonable expectation of privacy. However, Plaintiffs cannot allege any protected privacy interest in IP addresses.

Even if it is assumed that the ability of a website operator to obtain a user's IP address constitutes operating a pen register, the issue here is whether, when Plaintiffs chose to access the Website, they had a reasonable expectation in the privacy of their computers' IP addresses. Based on relevant authorities, the answer is no.

It is well established in the Ninth Circuit (and across the country) that "there is no legally protected privacy interest in IP addresses." *Kishnani*, 2025 WL 1745726, at *4; *see also Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) ("Internet users have no expectation of privacy in ... IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information."); *see also, Ji v. Naver Corp.*, 2022 WL 4624898, at *7 (N.D. Cal. Sept. 30, 2022) (collection of "***user and device identifiers***" could not give rise to "a privacy injury") (emphasis added); *Malibu Media, LLC v. Doe*, 2019 WL 2537671, at *3 (D. Conn. June 20, 2019) ("[T]here is no expectation of privacy in . . . an IP address."); *Digital Shape Techs., Inc. v. Glassdoor, Inc.*, 2016 WL 5930275, at *4 (N.D. Cal. Oct. 12, 2016) (this Court held that the plaintiff had no "expectation of privacy with respect to her email address or IP address.") (citing

[5] FAC ¶ 49. As explained above, Plaintiffs fail to allege the precise scope of the data she claims constitutes "dialing, routing, addressing, or signaling information."

*United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008)); *United States v. Kidd*, 394 F. Supp. 3d 357, 362 (S.D.N.Y. 2019) ("[M]ost courts have adopted a categorical approach holding that users have no reasonable expectation of privacy in such IP address information."); *Cooper v. Bonobos, Inc.*, 2022 WL 170622, at *4 (S.D.N.Y. Jan. 19, 2022) (disclosure of "less sensitive data" such as "addresses, phone numbers, . . . email addresses, and IP addresses" does not constitute an injury in fact); *United States v. Jean*, 207 F. Supp. 3d 920, 928–29 (W.D. Ark. 2016) (An "IP address can be determined with relative ease because it is always attached, like a 'return address,' to every 'envelope' of information exchanged back and forth by computers that are actively communicating with each other over the internet."), *aff'd*, 891 F.3d 712 (8th Cir. 2018). The same is true here – Plaintiffs have no protectable privacy interest in IP addresses.

The FAC cites *Greenley v. Kochava, Inc*. as an authority supporting this argument, but *Greenley* is distinguishable. *Greenley* was an action against a data broker and pertained to a different data set than IP addresses. 684 F.Supp.3d at 1035. Valnet is not a data broker, and unlike the defendant in *Greenley*, Valnet uses the Software to operate its Website rather than to "package[…] data and [sell] it to clients for advertising purposes." *Id*. Moreover, in *Greenley* the plaintiff alleged that the defendant collected his "geolocation, communications related to his personal characteristics, mode of living, purchase decisions, personal choices, app selections, spending habits, and click choices" – not IP addresses. *Id.* at 1037.

Here, Plaintiffs compare the collection of IP addresses by Valnet to the information collected in *Greenley*. But precise geolocation data and IP addresses are "apples and oranges for privacy purposes." *Id.* at 1189. Furthermore, the holding in *Greenley* was found by a California state court to be inconsistent with California courts' interpretation of CIPA. *See Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Cal. Super. Mar. 13, 2024) (rejecting *Greenley* as distinguishable from an IP address collection case and finding it out of step with "the current interpretation governing state law"). Therefore, Plaintiffs' claims that their privacy was invaded by the disclosure of their IP addresses are baseless.

**3. Pen Register Statutes Do Not Apply To IP Addresses**

California state courts interpreting CIPA have held that CIPA's pen register statute does not criminalize the process by which all websites communicate with all users who choose to access them. *See Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370, at *4 (Cal. Super. Sep. 09, 2024). And numerous courts analyzing the federal analogue to CIPA – that has an *identical* definition of a "pen register" – have held that collection of IP addresses does not violate the federal Pen Register Act because the collection of IP addresses is necessary for the internet to operate.[6] *See Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419, at *11 (C.D. Cal. May 29, 2007); *see also Capitol Recs. Inc. v. Thomas-Rasset*, 2009 WL 1664468, at *3 (D. Minn. June 11, 2009) ("[i]f [the Pen Register Act] did apply [to the collection of IP addresses], then the Internet could not function because standard computer operations require recording IP addresses so parties can communicate with one another over the Internet."); *Malibu Media, LLC v. Pontello*, 2013 WL 12180709, at *1 (E.D. Mich. Nov. 19, 2013) (same).

These cases – involving CIPA's virtually identical federal analogue – demonstrate that the collection of IP addresses is necessary for the Website to function and, thus, does not violate CIPA.

**4. CIPA's "Pen Register" Statute Should Be Construed Narrowly.**

Plaintiffs urge this Court to construe CIPA "in accordance with the interpretation that provides the ***greatest privacy protection***." FAC ¶¶ 30, 31 (*citing Matera v. Google Inc.*, 2016 WL 8200619, at *4 (N.D. Cal. Aug. 12, 2016); *In re Google Inc.*, 2013 WL 5423918, at *21 (N.D. Cal. Sep. 26, 2013); and *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. May 31, 2022)). But *In re Google*, *Javier*, and *Matera* addressed neither "pen registers," nor IP addresses.[7] Moreover, Plaintiffs' reliance on *Ribas v. Clark*, 38 Cal. 3d 355, 360–61 (1985), is likewise

[6] CIPA's definition of "pen register" was copied almost verbatim from the federal Pen Register statute. *See* 18 U.S.C. § 3127(3). Though not binding, interpretations of similar federal laws are certainly persuasive in interpreting California law. *See, e.g., Bell v. Farmers Ins. Exch.*, 87 Cal. App. 4th 805, 817 (2001) ("California courts have recognized that ... authorities construing [similar] federal statutes provide persuasive guidance to state courts.").

[7] The *Matera* Court in fact held that § 631(a)'s first prong is "limited to communications passing over 'telegraph or telephone' wires, lines, or cables." *Matera,* 2016 WL 8200619, at *18.

misplaced. FAC ¶ 23. While *Ribas* emphasized the importance of protecting the privacy of private communications, it did not extend such protections to routing or addressing information. The provision of CIPA at issue here–the so-called "pen register" clause–by its plain terms regulates only the collection of non-content information such as dialing, routing, and addressing data. Unlike the private conversations at issue in *Ribas*, pen register data does not implicate the substance of communications.

But even assuming for the sake of argument that Plaintiffs could have a privacy interest in their IP addresses or other device metadata shared by the Software (they do not), CIPA should not be interpreted as expansively as Plaintiffs suggest, because it would be inconsistent with the plain language of the statute. It is true that the definition of a "pen register" under CIPA does not reference landlines or telephones.[8] This omission is the primary reason some courts have held that the statutory language is unambiguous regarding the expansive scope of the pen register provision, and that no further analysis–such as legislative history–is required. *See, e.g.*, *Riganian*, 2025 WL 2021802, at *11 ("[I]f the drafters of Section 638.50 intended for 'pen register' to be limited to telephone technologies, they knew how to say so."). However, even though the definition of the "pen register" does not explicitly mention landlines, all elements of the definition are tailored for the types of devices that have been historically understood to be pen registers – physical devices installed on a landline telephone to make a record of the phone numbers dialed from that phone and used by law enforcement for surveillance. *See Smith v. Maryland*, 442 U.S. 735, 736 n. 1 (1979) ("A pen register is a mechanical device that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released."); *see also People v. Larkin*, 194 Cal. App. 3d 650, 653 n.2 (1987) ("A pen register is a mechanical device

---

[8] *See Licea v. Cinmar*, LLC, 659 F. Supp. 3d 1096, 1104–05 (C.D. Cal. 2023) (examining the first clause of Cal. Penal Code § 631(a), referring to the use of a "telegraph or telephone wire"); *Licea v. Vitacost.com, Inc*., 683 F. Supp. 3d 1118, 1124 (S.D. Cal. 2023) (examining Cal. Penal Code § 632.7(a), which contains the statutory language of "landline telephone"); *Augustine v. Lenovo (United States), Inc*., 2023 WL 4938050, at *4 (S.D. Cal. Aug. 2, 2023) ("The Court finds that the plain language of section 632.7 limits the applicability of the statute to communications between certain types of telephones, not the internet."); *Kauffman v. Papa John's Int'l, Inc*., 2024 WL 171363, at *9 (S.D. Cal. Jan. 12, 2024) ("The Court finds that the plain language of section 632.7 limits the applicability of the statute to communications between certain types of telephones, not the internet ....").

connected to a telephone number to monitor dialing activity. It registers the phone numbers dialed to make outgoing calls, including the dates and times the receiver is picked up and replaced."). Indeed, even Plaintiffs agree that, "[h]istorically, law enforcement used 'pen registers' to record the numbers of outgoing calls from a particular telephone line." FAC ¶ 28.

CIPA's "pen register" definition comprises several elements outlined above that support the strict interpretation of the statutory wording. To be a "pen register" the Software would need to "***record or decode***" data "***transmitted by an instrument or facility***." Cal. Penal Code § 638.50(b) (emphasis added). Plaintiffs typically simply allege that smartphones and computers are "instrument[s] or facilit[ies]." *Id.* Plaintiffs in this case follow suit. However, neither the FAC, nor the authorities cited by Plaintiffs, offer any analysis explaining why software that transmits data should be deemed to "record or decode" such data, and why a browser that sends such data should be considered "***an instrument or facility***." *See, e.g., Shah v. Fandom, Inc.*, 754 F.Supp.3d 924, 928 (N.D. Cal. 2024) (offering no explanation for why the "instrument or facility" is a "computer[ ] or smartphone[ ].")

Other cases cited by Plaintiffs in support of an expansive interpretation of CIPA that would encompass online tracking technologies (FAC ¶ 31) are unpersuasive. *Lesh v. Cable News Network, Inc.* is an out-of-circuit decision applying California law based on then-existing interpretations by California courts, which have since evolved. 767 F. Supp. 3d 33 (S.D.N.Y. 2025). As explained above, *Greenley* is likewise inapposite. Additionally, *Greenley* was decided at the early stages of "pen register" litigation under CIPA. The *Greenley* court observed that "it seems no court has interpreted [the pen register] provision of CIPA." *Greenley*, 684 F. Supp. 3d at 1050. That is no longer the case.[9]

Moreover, there is a growing corpus of law questioning an expansive interpretation of CIPA because it would criminalize otherwise legal internet operations. *See e.g., Sanchez v.*

[9] Plaintiff also cites to *Riganian* and *Gabrielli v. Motorola Mobility* in support of an expansive definition of "pen registers" including data collection tools beyond those that record information from telephones. *See* FAC ¶ 31 (*citing Riganian*, 2025 WL 2021802, at *11-12 and *Motorola Mobility LLC*, 2025 WL 1939957 (N.D. Cal. July 14, 2025)). Both *Riganian* and *Gabrielli* rely on *Greenley*.

*Cars.com Inc*., 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025) (interpreting CIPA narrowly in light of legislative history and the plain meaning of the statute).[10] For example, in the recent case *Sanchez v. Cars.com Inc.*, the California Superior court held that "'pen register' and 'tra[p] and trace devices' refer to devices or process that are used to record or decode dialing, routing, addressing or signaling information from telephone numbers, and ***not internet communications such as websites***.") (emphasis added). *Id.* In *Licea*, the court likewise advocated for the narrow interpretation of the statute that would turn the tide of lawsuits targeting legitimate business operations. 2024 WL 1698147, at *4 (the Court found that "public policy strongly disputes" a broad interpretation of CIPA because it would render "every single entity" whose website is "voluntarily visited by a potential plaintiff … as a [CIPA] violator" and "potentially disrupt a large swath of internet commerce").

A narrow statutory interpretation of CIPA is also supported by the structure of the statute. Indeed, if interpreted in combination with other CIPA provisions, it is hardly possible to reach a conclusion that "pen register" can be anything but a physical device installed on a telephone line. Like its federal counterpart, the federal Pen Register Act, CIPA also contains a provision requiring a court order authorizing the use of a pen register or trap and trace device to specify, the "***physical location of the telephone line*** to which the pen register or trap and trace device is to be attached." CIPA § 638.52(d)(3) ("An order issued pursuant to subdivision (b) shall specify ***all of the following***: […] [t]he number and, if known, ***physical location of the telephone line*** to which the pen register or trap and trace device is to be attached and, in the case of a trap and trace device, the geographic limits of the trap and trace order.") (emphasis added). Therefore, in order to obtain an order to install a pen register under CIPA, the authorizing order must contain ***all*** of the required elements, including the physical location of the telephone line. This discrete requirement makes clear that the corpus of state law pertaining to pen registers was not designed to cover internet communications, nor is it suited to do so.

[10] *But see Riganian*, 2025 WL 2021802, at *12 (disagreeing with the *Sanchez* court's reliance on legislative history rather than the language of the statute).

Furthermore, CIPA's definition of "pen register" was copied almost verbatim from federal law. *See* 18 U.S.C. § 3127(3). It is well established that the federal Pen Register Act's definitions pertain to telephone lines, and not the operation of the websites. *See Application of U.S. of Am. for an Ord. Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995) (holding definitions at issue "include only devices that are attached to a telephone line.") The *Sanchez* court analyzed both federal and state statutes and held that similarities are not coincidental. *See Sanchez*, 2025 WL 487194, at *3.

Finally, as rightly pointed in *Sanchez,* there is no controlling published authority in California on the issue of whether internet software constitute "pen registers" or "trap and trace devices" within the meaning of CIPA. *Id.* This court is therefore not bound to follow any of the authorities supporting an expansive interpretation of CIPA's pen register provision, and should reject the expansive interpretation advanced by the FAC.

**E. <u>Plaintiffs Fail to Plead All Requisite Elements Of a "Pen Register"</u>**

Even assuming that the Software allegedly installed by Valnet could somehow be considered a "pen register" (which, as explained above, it is not), the FAC must still be dismissed because it fails to adequately allege all five elements necessary to meet the statutory definition of a "pen register":

A "pen register" is a [i] "device or process that [ii] records or decodes [iii] dialing, routing, addressing, or signaling information [iv] transmitted by an instrument or facility from which a wire or electronic communication is transmitted, [v] but not the contents of a communication." CIPA § 638.50(b).

Plaintiffs' lengthy pleading, oversaturated with technology explanations unrelated to the statutory definition of a "pen register," fails to allege what precise data set they contend constitutes "dialing, routing, addressing, or signaling information,"[11] or how the Software satisfies the other elements of the statutory definition of a "pen register." With allegations concerning the scope of

[11] In FAC, Plaintiffs now allege that "public IP address [are] 'routing, addressing, or signaling information.'" FAC ¶ 49. Yet, Plaintiffs seem to allege further that some "additional data points" might also qualify as "routing, addressing, or signaling information." *Id.* ¶ 69.

transferred data scattered throughout the FAC, Plaintiffs yet again fail to clearly allege what specific data they believe was actually transmitted by the Software, or specify which data was held by third parties and allegedly "combined" with the data transferred by the Software. Plaintiffs allege that some additional data sets like "the user-agent string (browser, operating system, and device type) and device capabilities such as supported image formats and compression methods" in combination with persistent identifiers, can potentially identify users. FAC ¶ 69. However, it is still not clear in the FAC which of this data Plaintiffs allege was transferred by the Software (as opposed to data already in the possession of third-party recipients and collected from other sources). Moreover, to the extent Plaintiffs allege that their privacy was somehow invaded by so-called "fingerprinting," Plaintiffs fail to allege this data is "dialing, routing, addressing, or signaling information," and not "contents of a communication."

For this separate reason, Plaintiffs' FAC fails to state a claim and must be dismissed. *Hinds Invs., L.P. v. Angioli*, 654 F.3d 846, 850 (9th Cir. 2011) (holding the Court may dismiss a claim "where there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim."); *see also*, *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *5 (E.D. Cal. 2023) (finding dismissal is proper "if the factual elements of a cause of action are present but are scattered throughout the complaint and not organized into a 'short and plain statement of the claim[.]'").

## V. CONCLUSION

For the foregoing reasons, the FAC should be dismissed because: (i) CIPA's "pen register" definition does not apply to software installed on users' web browsers; (ii) the data allegedly transmitted via the Software, such as IP addresses and device metadata, is not actionable under CIPA; and (iii) Plaintiffs, in any event, fail to adequately plead each element of a "pen register." Accordingly, the FAC should be dismissed with prejudice, and without leave to amend.

DATED: September 11, 2025

RESPECTFULLY SUBMITTED,

LUCY HOLMES PLOVNICK
MITCHELL SILBERBERG & KNUPP LLP

By: */s/ Lucy Holmes Plovnick*
Lucy Holmes Plovnick
Attorney for Valnet Inc. and Valnet US Inc. d/b/a Screenrant.com