KEVIN E. GAUT (SBN 117352),
keg@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone: (310) 312-2000
Facsimile: (310) 312-3100

LUCY H. PLOVNICK (*pro hac vice*) (DC Bar No. 488752)
lhp@msk.com
MITCHELL SILBERBERG & KNUPP LLP
1818 N. Street NW, 7th Floor
Washington, DC 20036
Telephone: (202) 355-7900
Facsimile: (202) 355-7899

Attorneys for Valnet Inc. and Valnet US Inc.
d/b/a Screenrant.com

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DASSAH MAKETA, individually and on behalf of all others similarly situated,

Plaintiff,

v.

VALNET INC. and VALNET U.S., INC. d/b/a SCREENRANT.COM,

Defendants.

CASE NO. 3:25-CV-05517-RS

Hon. Richard Seeborg, District Judge

**REPLY IN SUPPORT OF DEFENDANTS VALNET INC. AND VALNET US INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

Date: October 16, 2025
Time: 1:30 p.m.
Courtroom: 3

Filed: 04/29/2025
Removed: 07/01/2025

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 6

II. ARGUMENT ........ 7

A. The Software Is Not a "Pen Register" ........ 7

1. The Data Transferred by the Software Is Not Covered by CIPA ........ 7

2. Plaintiffs Cannot Show That They Have a Legally Protected Privacy Interest in Their IP Addresses ........ 8

B. Neither the Plain Text of CIPA Nor the Legislative History Supports an Expansive Interpretation of the Statute ........ 10

C. Plaintiffs Fail to Plead All Requisite Elements of a "Pen Register" ........ 12

III. CONCLUSION ........ 13

# TABLE OF AUTHORITIES

**Page(s)**

## CASES


*Bonham v. Nevada*,
2023 WL 11822236 (D. Nev. Nov. 27, 2023), *report and recommendation adopted*, 2024 WL 3387361 (D. Nev. July 11, 2024) ... 12, 13

*Britton v. County of Santa Cruz*,
2020 WL 4197609 (N.D. Cal. July 22, 2020) ... 10

*Capitol Recs. Inc. v. Thomas-Rasset*,
2009 WL 1664468 (D. Minn. June 11, 2009) ... 11

*Casillas v. Transitions Optical, Inc.*,
2024 WL 4873370 (Cal. Super. Ct. Sept. 9, 2024) ... 10, 11

*Columbia Pictures Indus. v. Bunnell*,
2007 WL 2080419 (C.D. Cal. May 29, 2007) ... 11

*Cooper v. Bonobos, Inc.*,
2022 WL 170622 (S.D.N.Y. Jan. 19, 2022) ... 9

*Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*,
603 U.S. 799 (2024) ... 11

*Digital Shape Techs., Inc. v. Glassdoor, Inc.*,
2016 WL 5930275 (N.D. Cal. Oct. 12, 2016) ... 9

*Glob. Priv. Funding, Inc. v. Empyrean W., LLC*,
2014 WL 12610142 (C.D. Cal. Feb. 20, 2014) ... 13

*Harris v. Oregon*,
2021 WL 2555662 (D. Or. June 18, 2021) ... 13

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) ... 9

*Ji v. Naver Corp.*,
2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) ... 9

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) ... 10

*Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726 (N.D. Cal. June 24, 2025), *appeal filed*, No. 25-4452 (July 18, 2025) ... 7, 8, 9

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024) .......... 9, 10

*Macedo v. Deutsche Bank Nat'l Tr. Co.*,
2014 WL 1600497 (S.D. Cal. Apr. 17, 2014) .......... 13

*Malibu Media, LLC v. Doe*,
2019 WL 2537671 (D. Conn. June 20, 2019) .......... 9

*Malibu Media, LLC v. Pontello*,
2013 WL 12180709 (E.D. Mich. Nov. 19, 2013) .......... 11

*Martin v. Sephora USA, Inc.*,
2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) .......... 13

*People v. Larkin*,
194 Cal. App. 3d 650 (1987) .......... 10

*Ryan v. Bac Home Loans Servicing LP*,
2011 WL 317653 (D. Ariz. Feb. 1, 2011) .......... 13

*Sanchez v. Cars.com Inc.*,
2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025) .......... 6

*Smith v. Maryland*,
442 U.S. 735 (1979) .......... 10

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......... 11

*United States v. Jean*,
207 F. Supp. 3d 920 (W.D. Ark. 2016), *aff'd*, 891 F.3d 712 (8th Cir. 2018) .......... 9

*United States v. Kidd*,
394 F. Supp. 3d 357 (S.D.N.Y. 2019) .......... 9

*United States v. Kirby*,
74 U.S. 482 (1868) .......... 11

### STATUTES

Cal. Pen. Code
§ 631 *et seq.* .......... 6

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

§ 638.50(b) .......... 7, 12
§ 638.51(a) .......... 7, 11, 12

## I. INTRODUCTION

Plaintiffs Dassah Maketa and Bryce Peppers ("Plaintiffs") proudly declare that "the wind is blowing in Plaintiffs' direction" regarding their California Invasion of Privacy Act ("CIPA") claims, (Opp. at 1) and seize every opportunity to stretch CIPA far beyond its intended bounds in order to monetize this fortuitous moment. Yet, as explained in the Motion, this Court has the authority to turn the tide on their extortionate claims, which are improperly aimed at restricting lawful Internet activities.

In their First Amended Complaint ("FAC"), Plaintiffs make far-reaching and unfounded allegations that the installation of the ADNXS Tracker and OpenX Tracker (the "Software") on the ScreenRant and Polygon websites (the "Websites") constitutes potentially "[t]he biggest data breach ever recorded." FAC ¶ 186. Yet, Plaintiffs ignore the fact that the data actually transmitted by the Software is limited to internet protocol ("IP") addresses and device data. Indeed, Plaintiffs have alleged that the ADNXS Tracker and OpenX Tracker collect and transmit only data such as website visitors' IP addresses, device type, browser type, and other similar device-related information. FAC ¶¶ 3-4; Motion at 9. This is neither the type of data nor the type of technology that was ever envisaged by the Legislature when it enacted the statute.

CIPA, Cal. Pen. Code § 631, *et seq.*, was originally enacted in 1967. At that time, it was aimed at prohibiting unlawful "wiretapping, eavesdropping, interception or recording of telephone communications" through the installation of pen registers or trap and trace devices without a court order or consent from the user. *See Sanchez v. Cars.com Inc.*, 2025 WL 487194, at *3 (Cal. Super. Ct. Jan. 27, 2025). Yet now, Plaintiffs are using CIPA to assert a claim against websites that use third-party data analytics software, arguing that this violates CIPA's pen register provision. Plaintiffs' attempt to stretch CIPA to cover routine website analytics not only mischaracterizes the nature of the data collected but also distorts a statute that was never intended to regulate Internet technology. Applying a 1967 law designed for landline, telephone wiretapping to modern websites risks imposing sweeping liability – $5,000 per violation – on virtually any business with an online presence in California. Almost all websites use third-party data-processing software to improve their functionality. *See How Websites and Apps Collect and Use*

*Your Information*, Fed. Trade Comm'n Consumer Advice, https://consumer.ftc.gov/articles/how-websites-apps-collect-use-your-information (Sept. 2023). As a result, any company operating a website accessible in California may be subject to potential statutory penalties of $5,000 per violation under a law that was enacted long before the advent of the Internet. This Court should reject Plaintiffs' expansive interpretation, decline to extend CIPA beyond its intended scope, and dismiss this case with prejudice, and without leave to amend.

## II. ARGUMENT

### A. <u>The Software Is Not a "Pen Register"</u>

To state a claim under CIPA Section 638.51(a), Plaintiffs must establish that the Software allegedly installed by Valnet on the Websites qualifies as a "pen register." A "pen register" as defined under CIPA Section 638.50(b) is a [i] "device or process that [ii] records or decodes [iii] dialing, routing, addressing, or signaling information [iv] transmitted by an instrument or facility from which a wire or electronic communication is transmitted, [v] but not the contents of a communication." CIPA § 638.50(b). Here, Plaintiffs' claim fails because they cannot allege that the Software transfers data that is covered by CIPA.

#### 1. The Data Transferred by the Software Is Not Covered by CIPA

As explained in the Motion, CIPA is not applicable here because the Software described in the FAC is not a "pen register," as it does not record data that constitutes "dialing, routing, addressing, or signaling information." CIPA § 638.50(b). Plaintiffs allege that the Software allows Microsoft Corporation and OpenX Technologies, Inc. (the "Third Parties") to combine data shared by the Software with their own data sets, which form a "unique ***fingerprint*** that allows for cross-site tracking and behavioral profiling." FAC ¶ 69 (emphasis added). However, this so-called "fingerprinting" does not constitute recording or decoding "dialing, routing, addressing, or signaling information," but instead, constitutes the "contents of a communication" and are not the type of data covered by CIPA. *See* Motion at 13; *see also Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025), *appeal filed*, No. 25-4452 (July 18, 2025) ("[a]ny '***fingerprint***' that reveals biographical information is 'the ***content***' of any communication between visitor and Website, and thus, the claim and the case cannot survive"

because "if that type of information is collected, the statute ceases to apply") (emphasis added). Plaintiffs attempt to distinguish the *Kishnani* case by arguing that "the [*Kishnani*] plaintiff alleged that the third party software provider collected the user's 'name, date of birth, and address' *directly from the website*." Opp. at 9-10 (emphasis in original). This argument, however, cannot stand. In *Kishnani*, just like in our case, the plaintiff alleged that the third party software ***automatically*** collected device and browser information, geographic information, referral tracking, and URL tracking the moment a visitor made a connection to the website. 2025 WL 1745726, at *1. The plaintiff in *Kishnani* did not actually allege that such information was affirmatively inputted into the website by the plaintiff himself. Indeed, the court specifically noted: "The FAC is vague as to how a visitor's biographical information could appear on a 'page of the Website' for Defendant's collection." *Id.* at *4 n.3. Accordingly, as in *Kishnani*, Plaintiffs' "fingerprinting" claims fail.

Plaintiffs also argue broadly – and without any basis – that "Defendants […] sell the profiles through real-time bidding, where these comprehensive profiles are sold to advertisers in the blink of an eye without notice or consent, so Defendants can monetize their Websites." Opp. at 2. But Valnet does not compile user profiles, nor does it sell such profiles through real-time bidding. Instead, Valnet solely uses the ADNXS and OpenX Trackers for legitimate purposes, such as operating and managing advertisements on the Websites, in much the same way that many other websites operate. As explained in the Motion, Valnet does not disclose any content of users' communications, and is not a data broker. *See* Motion at 9-10. Plaintiffs' attempts to conflate the data actually transmitted by the Software with data that could potentially be linked by Third Parties, and allegations related to the conduct of Third Parties (Opp. at 11), are misplaced.

**2. Plaintiffs Cannot Show That They Have a Legally Protected Privacy Interest in Their IP Addresses**

As explained in the Motion, to establish that Valnet violated Plaintiffs' privacy rights, Plaintiffs must allege a specific, legally protected privacy interest in their computers' IP addresses, and must also demonstrate that they had a reasonable expectation of privacy. *See* Motion at 14. Plaintiffs, however, cannot do so.

Courts across the country, including in the Ninth Circuit, have indeed held that "there is no legally protected privacy interest in IP addresses." *Kishnani*, 2025 WL 1745726, at *4 (internal quotations and citation omitted); *see also Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) ("Internet users have no expectation of privacy in ... IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information."); *Ji v. Naver Corp.*, 2022 WL 4624898, at *2 (N.D. Cal. Sept. 30, 2022) (collection of "***user and device identifiers***" could not give rise to "a privacy injury") (emphasis added); *Malibu Media, LLC v. Doe*, 2019 WL 2537671, at *3 (D. Conn. June 20, 2019) ("[T]here is no expectation of privacy in … an IP address."); *Digital Shape Techs., Inc. v. Glassdoor, Inc.*, 2016 WL 5930275, at *4 (N.D. Cal. Oct. 12, 2016) (this Court held that the plaintiff had no "expectation of privacy with respect to her email address or IP address") (citing *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008)); *United States v. Kidd*, 394 F. Supp. 3d 357, 362 (S.D.N.Y. 2019) ("[M]ost courts have adopted a categorical approach holding that users have no reasonable expectation of privacy in such IP address information."); *Cooper v. Bonobos, Inc.*, 2022 WL 170622, at *4 (S.D.N.Y. Jan. 19, 2022) (disclosure of "less sensitive data" such as "addresses, phone numbers, … email addresses, and IP addresses" does not constitute an injury in fact); *United States v. Jean*, 207 F. Supp. 3d 920, 928-29 (W.D. Ark. 2016) (an "IP address can be determined with relative ease because it is always attached, like a 'return address,' to every 'envelope' of information exchanged back and forth by computers that are actively communicating with each other over the internet."), *aff'd*, 891 F.3d 712 (8th Cir. 2018). Plaintiffs' Opposition completely ignores this case law.

Moreover, Plaintiffs do not dispute that the collection of IP addresses is part of the normal functioning of the Internet. As the *Licea v. Hickory Farms LLC* court recognized, finding a legally protected privacy interest here would threaten to render every website "visited by a potential plaintiff, thereby providing an IP address[,]" a violator of CIPA. *Licea*, 2024 WL

1698147, at *4 (Cal. Super. Ct. Mar. 13, 2024). The Court should not accept Plaintiffs' sweeping invitation to interpret CIPA so broadly.[1]

**B. <u>Neither the Plain Text of CIPA Nor the Legislative History Supports an Expansive Interpretation of the Statute</u>**

Plaintiffs cite a list of cases in support of their argument that "the wind is blowing in Plaintiffs' direction." Opp. at 1 (citing cases). Valnet, however, does not contend that there is no authority that supports Plaintiffs' broad interpretation of CIPA. Instead, Valnet urges this Court, in the absence of binding authority, to follow courts that have questioned such a broad interpretation of CIPA's pen register provision, which would criminalize lawful Internet commerce activities. *See, e.g.*, *Licea*, 2024 WL 1698147, at *4 (finding that online devices that record IP addresses cannot be pen registers and that "public policy strongly disputes" a broad reading of CIPA because it could "potentially disrupt a large swath of internet commerce"); *Casillas v. Transitions Optical, Inc.*, 2024 WL 4873370, at *4 (Cal. Super. Ct. Sept. 9, 2024) ("The pen register statute did not, and does not, criminalize the process by which all websites communicate with all users who choose to access them.").

While the definition of a "pen register" under CIPA does not explicitly mention landlines or telephones, all elements of the definition are tailored for the types of devices that have historically been understood to be pen registers – physical devices installed on a landline telephone to make a record of the phone numbers dialed from that phone and used by law enforcement for surveillance. *See Smith v. Maryland*, 442 U.S. 735, 736 n.1 (1979) ("A pen register is a mechanical device that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released."); *see also People v. Larkin*, 194 Cal. App. 3d 650, 653 n.2 (1987) ("A pen register is a mechanical device connected to a

---

[1] Plaintiffs argue that Valnet's removal of this case to federal court constituted an "implicit concession" that Plaintiffs sustained a concrete injury. Opp. at 12-13. Not so. The mere fact of removal does not constitute an admission of harm. None of the cases cited by Plaintiffs in support of this unjustified argument say otherwise. Rather, these cases only stand for the proposition that defendants, as the party invoking federal court jurisdiction, must establish Article III standing. *See Britton v. County of Santa Cruz*, 2020 WL 4197609, at *4 (N.D. Cal. July 22, 2020); *Jones v. Ford Motor Co.*, 85 F.4th 570, 573 (9th Cir. 2023).

telephone number for monitoring dialing activity. It registers the phone numbers dialed to make outgoing calls, including the dates and times the receiver is picked up and replaced."). Plaintiffs' Opposition ignores this fact.

Moreover, applying the pen register statute to IP addresses jeopardizes the function of the Internet and would lead to an absurd interpretation of the statute. Plaintiffs cite to *Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 603 U.S. 799 (2024) (Opp. at 4) where the Supreme Court has held that "the Court may not replace the actual text [of the statute] with speculation as to Congress' intent." *Id.* at 815 (internal quotations omitted). But Valnet does not seek to "replace the actual text." Rather, Valnet urges this Court to interpret the statute in a way that would avoid absurd results. *See United States v. Kirby*, 74 U.S. 482, 486-87 (1868) ("All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language, which would avoid results of this character.").

California state courts interpreting CIPA have held that CIPA's pen register statute does not criminalize the process by which websites communicate with users who choose to access them. *See Casillas*, 2024 WL 4873370, at *4. In addition, numerous courts analyzing the analogous federal pen register statute have held that the collection of IP addresses does not violate the federal Pen Register Act because the collection of IP addresses is necessary for the Internet to operate. *See Columbia Pictures Indus. v. Bunnell*, 2007 WL 2080419, at *11 (C.D. Cal. May 29, 2007); *see also Capitol Recs. Inc. v. Thomas-Rasset*, 2009 WL 1664468, at *3 (D. Minn. June 11, 2009) ("If [the Pen Register Act] did apply [to the collection of IP addresses], then the Internet could not function because standard computer operations require recording IP addresses so parties can communicate with one another over the Internet."); *Malibu Media, LLC v. Pontello*, 2013 WL 12180709, at *4 (E.D. Mich. Nov. 19, 2013) (same). This thus demonstrates that Plaintiffs should have no cause of action under the analogous CIPA Section 638.51(a) for the conduct alleged here.

Moreover, Plaintiffs' citation to *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) (Opp. at 5) is misplaced because *Forrester* concerned surveillance techniques employed by the government, not by a private party operating its private website. *See id.* ("We conclude that

the surveillance techniques ***the government*** employed here are constitutionally indistinguishable from the use of a pen register…") (emphasis added).

**C. <u>Plaintiffs Fail to Plead All Requisite Elements of a "Pen Register"</u>**

The FAC must also be dismissed because Plaintiffs fail to sufficiently plead all five elements necessary to meet the statutory definition of a "pen register." *See* Motion at 20-21. As explained in the Motion, to state a claim under CIPA § 638.51(a), Plaintiffs must demonstrate that the Software meets the definition of a "pen register" under CIPA § 638.50(b). Under the plain language of the statute, to be deemed a "pen register," the Software would need to satisfy several statutory requirements: it must be [i] a "device or process that [ii] records or decodes [iii] dialing, routing, addressing, or signaling information [iv] transmitted by an instrument or facility from which a wire or electronic communication is transmitted, [v] but not the contents of a communication." CIPA § 638.50(b). Plaintiffs' FAC fails to adequately allege each requisite element, and Plaintiffs' attempt to fix this deficiency in their Opposition should not be permitted, especially given that Plaintiffs already had an opportunity to amend the original Complaint.

Plaintiffs' Opposition does not address Valnet's argument that Plaintiffs' allegations are scattered throughout the FAC, making it extremely difficult for Valnet to decipher what it is Plaintiffs are actually alleging. Indeed, in arguing that they adequately alleged each element of a pen register, Plaintiffs take it upon themselves to include a chart that has a column "application to facts" and includes citations scattered throughout the FAC. *See* Opp. at 19. By providing this chart, Plaintiffs in fact concede that their FAC is deficient.

In *Bonham v. Nevada*, 2023 WL 11822236, at *1 (D. Nev. Nov. 27, 2023), *report and recommendation adopted*, 2024 WL 3387361 (D. Nev. July 11, 2024), the plaintiff filed a third amended complaint that was 70 pages without exhibits and 95 pages in total. The court emphasized that "[a] complaint having the factual elements of a cause of action scattered throughout the complaint and not organized into a 'short and plain statement of the claim[s]' may be dismissed for failure to satisfy Rule 8(a)." *Id.* The court dismissed, without leave to amend, the plaintiff's "excessively long and prolix complaint," finding that the complaint violated Rule 8(a) of the Federal Rules of Civil Procedure because the plaintiff's "scattered, repetitive,

difficult to decipher allegations def[ied] the words 'short and plain' and [were] far from 'concise and direct.'" *Id.* at *1-2.

Likewise, here, Plaintiffs scattered their allegations throughout the 80-page FAC, making it difficult to decipher. Plaintiffs' chart illustrates that their claims are insufficiently pled by citing to allegations from all over the FAC. *See* Opp. at 19-20. This violates Rule 8(a) and the FAC should be dismissed, without leave to amend, for this reason alone. *See Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *5 (E.D. Cal. Mar. 30, 2023) (finding dismissal proper "if the factual elements of a cause of action are present but are scattered throughout the complaint and not organized into a 'short and plain statement of the claim[.]'"); *Macedo v. Deutsche Bank Nat'l Tr. Co.*, 2014 WL 1600497, at *3 (S.D. Cal. Apr. 17, 2014) (same); *Glob. Priv. Funding, Inc. v. Empyrean W., LLC*, 2014 WL 12610142, at *1 (C.D. Cal. Feb. 20, 2014) (same); *Harris v. Oregon*, 2021 WL 2555662, at *1 (D. Or. June 18, 2021) (same); *see also Ryan v. Bac Home Loans Servicing LP*, 2011 WL 317653, at *4 (D. Ariz. Feb. 1, 2011) ("[T]he scattered nature of these [allegations] alone violates Fed. R. Civ. P. 8, and justifies dismissal of the action.").

## III. CONCLUSION

For the foregoing reasons and for the reasons stated in the Motion, the Court should grant Valnet's Motion and dismiss the FAC with prejudice, and without leave to amend.

DATED: October 2, 2025

RESPECTFULLY SUBMITTED,

LUCY HOLMES PLOVNICK
MITCHELL SILBERBERG & KNUPP LLP

By: */s/Lucy Holmes Plovnick*
Lucy Holmes Plovnick
Attorneys for Valnet Inc. and Valnet US Inc. d/b/a Screenrant.com